UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
LAMONT LEE,

      Plaintiff,

  -v-           1:19-CV-473

THE CITY OF TROY; PATROLMAN
CHRISTOPHER PARKER;
PATROLMAN LOUIS PERFETTI;
PATROLMAN JUSTIN ASHE; and
PATROLMAN KYLE JONES,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:     OF COUNSEL:

SIVIN, MILLER & ROCHE LLP  DAVID ROCHE, ESQ.
Attorneys for Plaintiff    EDWARD SIVIN, ESQ.
20 Vesey Street Suite 1400   CLYDE RASTETTER, ESQ.
New York, New York 10007   GLENN D. MILLER, ESQ.

PATTISON, SAMPSON LAW FIRM MICHAEL E. GINSBERG, ESQ.
Attorneys for Defendants   RHIANNON INEVA
22 First Street       SPENCER, ESQ.
P.O. Box 208
Troy, New York 12181

OFFICE OF RICHARD T. MORRISSEY  RICHARD T. MORRISSEY, ESQ.
Attorneys for Defendants
64 Second Street
Troy, New York 12180

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On May 12, 2021, a jury returned a verdict finding no cause of action for plaintiff Lamont Lee ("Lee" or "plaintiff")'s claims of excessive force in the course of an arrest against defendants the City of Troy, Christopher Parker, Louis Perfetti, Justin Ashe, and Kyle Jones (together "defendants"). After the jury left the courtroom but before the parties were cleared to leave, defendants' lead attorney, Michael E. Ginsberg, Esq. ("Mr. Ginsberg") approached plaintiff and his attorneys. Mr. Ginsberg then told "them" to "choke on their manufactured evidence." Predictably, this comment drew an explosive response from plaintiff.

The Court was promptly informed about the incident and made a record. After expressing its displeasure with Mr. Ginsberg's conduct in the courtroom, the Court suggested that sanctions should follow. On May 19, 2021, the Court issued an order to show cause why they should not. On June 3, 2021, Mr. Ginsberg responded in opposition to the order and moved for the Court's recusal. The order and motion, having been fully briefed, will now be decided on the submissions and without oral argument.

## II. <u>BACKGROUND</u>

From May 10 through May 12, 2021, this Court presided over a jury trial in this case.  Text Minute Entries dated 5/10/2021, 5/11/2021, and 5/12/2021.  Essentially, Lee claimed that defendants subjected him to excessive force in arresting him on the night of March 3, 2018.  *See* Dkt. 72, pp. 3-7.[1]  Of central importance to the parties' claims was a video captured on the night of the arrest.  Dkt. 85, pp. 3-4.  As it turned out, though, each party presented a different version of that footage.  *See* Dkt. 91-5, p. 15.  Mr. Ginsberg's explanation for the two versions was that plaintiff deceptively altered his.  This claim became a recurring theme throughout the trial.  *See generally* Dkts. 91-2, pp. 5, 11; 91-3, pp. 45-47; 91-4, pp. 24, 197; 91-5, pp. 10, 15-16, 21, 24.

The jury deliberated on May 12, 2021 and returned a verdict for defendants that same day.  Text Minute Entry dated 5/12/2021, Dkt. 72.  The jury was excused, but the parties were ordered to remain in the courtroom to give the jury time to leave the building.  *See* Dkt. 78-2 ("Ellis Report"), p. 1.  According to Mr. Ginsberg, he approached the Court Security Officer on duty, Christopher Ellis ("Officer Ellis"), to ask when the parties would be permitted to leave.  Dkt. 90-1 ("Ginsberg Aff."), ¶ 3.  Officer Ellis was standing by the

---

[1] Pagination Corresponds with CM/ECF.

door, where Lee was waiting with his attorneys, David Roche,[2] Esq.

("Mr. Roche") and Clyde Rastetter ("Mr. Rastetter").[3]  *Id.* ¶ 3; *See* Dkt. 78-3

("Roche Aff."), ¶ 2.

However, when Mr. Ginsberg walked up to the courtroom rail, several feet

from Lee, Roche, and Rastetter, a "comment, to [his] surprise, came blurting

out of [his] mouth."  Ginsberg Aff. ¶ 3.  Mr. Ginsberg claims that he did not

direct the comment at plaintiff.  *Id.* ¶ 4.

Though there is agreement in broad strokes as to what that comment was,

every witness remembers it differently.  According to Mr. Ginsberg, he told

"them" to "choke on the manufactured evidence," and he does not remember

using language stronger than that.  Dkt. 78-1 ("Tr."), p. 3.

According to Mr. Roche, Mr. Ginsberg said something to the effect of

"[t]ake your fake fucking evidence and . . . go back to New York."  Tr. 2.

Mr. Rastetter heard Mr. Ginsberg say "[w]hy don't you go back to New York

and choke on that fucking manufactured evidence[?]"  Tr. 2-3.  Lee heard

"[g]o back down to New York and choke on that fucking manufactured tape

you got."  Tr. 3.  According to Officer Ellis, Mr. Ginsberg said "I would like to

---

[2] Although defendants managed to reproduce the name of plaintiff's lead counsel correctly in their affidavits, when quoting from the transcript, and in a couple of other instances in the present motion practice, *see* Dkts. 90, pp. 11-12, 21; 90-5, p. 8; *see generally* Dkt. 90-2; Ginsberg Aff., the Court notes that throughout the rest of the briefing for this order and motion defendants erroneously refer to Mr. Roche as "Mr. Roach," Dkts. 90, pp. 12-13 (referring to "Mr. Roach" twice on each page); 90-5, pp. 7-9 (referring to "Mr. Roach" four times in total).  The Court will use the correct spelling of Mr. Roche's surname in this opinion.

[3] Mr. Rastetter was not admitted to practice law at the time of trial, but he has been since.

congratulate you on the verdict and you can take that back to New York with you, you and your fucking fabricated evidence." Ellis Report 1 (cleaned up).

Apparently, Lee had a powerful emotional reaction to Mr. Ginsberg's comment that he had difficulty controlling. Dkt. 87-1 ("Lee Aff."), ¶ 4. According to Mr. Ginsberg's co-counsel, Rhiannon Ineva Spencer, Esq. ("Ms. Spencer"), Lee responded by yelling profanities and offensive remarks at Mr. Ginsberg. Dkt. 90-2 ("Spencer Aff."), ¶ 28. However, Mr. Ginsberg did not register any reaction from anyone except for Officer Ellis. Ginsberg Aff. ¶ 4.

At this point, Mr. Ginsberg affirms that he turned and walked away without further comment. Ginsberg Aff. ¶ 3. But both he and Ms. Spencer acknowledge that Officer Ellis admonished Mr. Ginsberg that his comment was inappropriate and that, for security's sake, he was in charge of the courtroom when the bench was empty. *Id.* ¶ 4; Spencer Aff. ¶ 29.

Apparently, Mr. Roche then asked Officer Ellis if there was a way to alert the Court as to what Mr. Ginsberg had said. Roche Aff., ¶ 4. Officer Ellis directed plaintiff's attorneys to the Courtroom Deputy. *Id.* ¶ 4. Mr. Rastetter spoke with the Courtroom Deputy, Phillip T. McBrearty ("McBrearty"), who instructed him to write a contemporaneous note concerning the encounter and use it to produce an affidavit at a later date. Dkt. 78-4 ("Rastetter Aff."), ¶ 5. Officer Ellis then reported the courtroom disturbance to the Court.

5

Meanwhile, Mr. Ginsberg and Ms. Spencer were preparing to leave the courthouse. *See* Spencer Aff. ¶ 31. On their way out, a Court Security Officer, perhaps Officer Ellis, told defense counsel not to leave and directed them instead into an adjoining room. *See* Ginsberg Aff. ¶ 7; Spencer Aff. ¶ 31. Nevertheless, a few minutes later defense counsel tried to leave again. Ginsberg Aff. ¶ 8; Spencer Aff. ¶ 31. At that point, Ms. Spencer was told that the Court may wish to speak to the attorneys. *Id.* ¶ 31.

Lee and the attorneys for both sides were summoned into the courtroom shortly afterward. Spencer Aff. ¶ 31. The court reporter was brought in and a short record was made concerning Mr. Ginsberg's comment. *See generally* Tr. 2-4. Each witness said their piece as related above. The Court also gave Mr. Ginsberg a chance to deny making the comment, or at least to explain it. Tr. 3. Ginsberg replied that he was simply "exercising [his] First Amendment right" and claimed not to remember having cursed at plaintiff's coterie. *Id.* But he did not deny that he made the comment. *Id.*

In the absence of any denial by Mr. Ginsberg as to the fact of having taunted Lee and his counsel, the Court concluded the brief hearing, saying:

> Okay. I am going to direct that a transcript of this proceeding right now be made and sent to the Disciplinary Committee of the Northern District of New York. The remarks were completely a hundred percent inappropriate and right in this courtroom and will not be tolerated. I am going to recommend that Mr. Ginsberg be disciplined and I hope that the discipline is firm.

>  Unbelievable, Mr. Ginsberg.  I hope you are disciplined and
>  maybe you may even learn a lesson.

Tr. 4.

To get an impartial perspective on the May 12, 2021 altercation, the Court asked Officer Ellis the next morning if he could submit an affidavit providing his account.  Ellis Report 1.  The Court then broached the issue of sanctions at the next meeting for the Board of Judges for the Northern District of New York.  The judges of the district left the matter to this Court to resolve.  On May 19, 2021, the Court issued an order to show cause why Mr. Ginsberg should not be sanctioned.  Dkt. 78.  On June 3, 2021, Mr. Ginsberg responded in opposition and moved for the Court to recuse itself.  Dkt. 90.  This decision now follows.

## III. <u>DISCUSSION</u>

Of course, before the Court decides whether to sanction Mr. Ginsberg, it must determine whether it can do so dispassionately and impartially.  The Court will consider defendants' recusal motion first, and only turn to the issue of sanctions if its decision-making withstands scrutiny.

### A. <u>Recusal</u>

If a party before a district court "makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse

party, . . . another judge shall be assigned to hear [that] proceeding."[4]

28 U.S.C. § 144 ("§ 144").  An affidavit under § 144 is only sufficient if it

"show[s] the objectionable inclination or disposition of the judge and give[s]

fair support to the charge of a bent of mind that may prevent or impede

impartiality of judgment."  *Sibley v. Geraci*, --- F. App'x ---, 2021 WL 2224369,

at *1 (2d Cir. June 2, 2021) (summary order) (cleaned up) (citing *Rosen v.*

*Sugarman*, 357 F.2d 794, 798 (2d Cir. 1966)).

Along similar lines, a judge must voluntarily recuse himself "in any

proceeding in which his partiality might reasonably be questioned."

28 U.S.C. § 455 ("§ 455")(a).  This includes when a judge holds "a personal

bias or prejudice concerning a party, or personal knowledge of disputed

evidentiary facts concerning the proceeding."  § 455(b)(1).

Under either statute, recusal motions are trusted to the district court's

discretion.  *LoCascio v. United States*, 473 F.3d 493, 495, 498 (2d Cir. 2007)

(affirming denial of recusal motion under both §§ 144 and 455).  In exercising

that discretion, courts should note that "opinions formed by the judge on the

basis of facts introduced or events occurring in the course of the current

proceedings, or of prior proceedings, do not constitute a basis for a bias or

---

[4] As a technical matter, a § 144 motion must be filed "not less than ten days before the beginning of the term at which the proceeding is to be heard, [unless] good cause [is] shown for failure" to timely file.  28 U.S.C. § 144.  As defendants correctly point out, the constricted timeframe given them to show cause why Mr. Ginsberg should not be sanctioned amounts to good cause, and defendants' § 144 motion will be considered regardless of timing.

partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* at 495.

"*Not* establishing bias or partiality, however, are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Liteky v. United States*, 510 U.S. 540, 555-56 (1994).

Defendants argue that recusal is warranted for six reasons.  First, they contend that the Court's statement at the close of the record on May 12, 2021 demonstrates bias against Mr. Ginsberg.  But that statement was an opinion formed "on the basis of facts introduced or events occurring in the course of the current proceedings," and thus not enough to merit recusal.  *LoCascio*, 473 F.3d at 495.

Nor was the comment aimed at Mr. Ginsberg himself, but rather at his conduct.  *See* Tr. 4 (noting that "[t]he *remarks* were completely a hundred percent inappropriate" (emphasis added)).  Accordingly, the Court is satisfied that its statement at the close of the record on May 12, 2021 does not reflect the kind of antagonism that would make fairness impossible.  *See, e.g.*, *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1316 (2d Cir. 1988) (finding no cause for disqualification for comments made by judge "in the context of

judicial conferences and hearings" which "were directly addressed to the conduct of the attorneys before him").

Second, defendants suggest that the Court is biased because Mr. Ginsberg's comment undermined the Court's handling of an issue within its authority.  Mr. Ginsberg's comment alleged that Lee had manipulated evidence, which defendants describe as "a violation of the Rules of Professional Misconduct [sic] and offen[sive to] the administration of the Court."  From defendants' perspective, the Court is incensed by Mr. Ginsberg's accusations that it mishandled one of its responsibilities and is thus out to get him.

But the Court already addressed its handling of the dispute concerning the two videos in a memorandum-decision and order issued today.  The Court freely admits that the two competing versions of the video should have been managed better and has ordered a new trial and hearing to remedy any mismanagement during the first trial.  In short, defendants' argument misses the mark.

Third, defendants object that Mr. Ginsberg is being singled out when Lee responded to Mr. Ginsberg's lone comment with an alleged stream of offensive language.  Spencer Aff. ¶ 28.  This argument also fails.  Defendants made no effort to put any comment plaintiff made on the record.  *See generally*, Tr. 2-4.  As a consequence, the Court has not the slightest idea of

what plaintiff said to Mr. Ginsberg, except that it was apparently offensive. *See* Spencer Aff. ¶ 28.

But even assuming that plaintiff's comments were especially harsh, the Court is well within its rights to expect more from an attorney who took an oath to adhere to certain standards of professional conduct than it expects from a layperson goaded by that same attorney. *Cf. United States v. Sampson*, 898 F.3d 287, 314 (2d Cir. 2018) (upholding district court's imposing heightened criminal sentence to send signal "that we will hold our attorneys to a higher standard").

Fourth, defendants suggest that the Court's deciding the motions *in limine* "prior to the return date and prior to giving the defense an opportunity to be heard" raises an inference of impropriety. But there *was* no return date. *See* Dkt. 48, p. 7 (requiring all pretrial submissions on or before Friday, April 30, 2021 but setting no response or return dates). And if defendants had moved *in limine* in their own right, defendants' motions would have been decided without giving Lee an opportunity to respond as well. *See id.* (affording neither party response). Defendants were not denied an opportunity to be heard, they simply did not take advantage of the same opportunity given to plaintiff. The Court has still seen no basis for recusal.

Fifth, defendants complain that they were only given thirty pages to respond to the order to show cause, while Lee was given twenty in addition to

the affidavits McBrearty suggested that they submit.  But Mr. Roche's and Mr. Rastetter's affidavits totaled six pages, meaning that the Court gave them twenty-six total pages to respond as opposed to defendants' thirty. *Compare* Roche Aff.; Rastetter Aff., *with* Dkt. 78, p. 5.  Defendants can hardly complain that the Court's giving them more pages to work with amounted to favoritism to plaintiff or antagonism to them.[5]

Sixth, defendants argue that the Court's partiality has been swayed due to *ex parte* communications providing it with extrajudicial information.  To defendants' point, a judge may be disqualified based on information in his possession from an extrajudicial source.  *Liteky*, 510 U.S. at 554.

Defendants argue that any knowledge the Court may have about Mr. Ginsberg's comment must be extrajudicial, because the comment was made after trial and outside of the Court's hearing.  As evidence, defendants point out that the Court noted when making a record of Mr. Ginsberg's comment that "[i]t has been reported . . . by the U.S. Marshals and Security that Mr. Ginsberg made a number of inappropriate remarks . . . ."  Tr. 2. Defendants also identify as extrajudicial sources of information Officer Ellis's

---

[5] In any case, defendants were directed to "submit affidavits and a memorandum of law no more than a total of thirty pages in [Mr. Ginsberg's] defense."  Dkt. 78, p. 5.  Defendants submitted forty-three total pages.  The Court will consider the eleven pages defendants spent on the recusal motion as a separate issue and will accept defendants' submissions in their entirety despite still coming in over the page limit.

report and the affidavits of Mr. Roche and Mr. Rastetter, provided at
McBrearty's suggestion.

Defendants are making a sizeable assumption in declaring those materials
to be extrajudicial.  *See ISC Holding AG v. Nobel Biocare Fin. AG*,
688 F.3d 98, 101, 107 (2d Cir. 2012) (pointing out "dubious proposition" that
ten-minute, ex parte conversation between district judge and attorney
constituted extrajudicial information because it concerned matter relevant to
ongoing proceeding).  Defendants' principal basis for arguing otherwise is
that they were denied the opportunity to controvert or test these statements
through the adversarial process, which the Seventh Circuit has pointed out
as one definition for an extrajudicial material.  *Edgar v. K.L.*, 93 F.3d 256,
259 (7th Cir. 1996).

Officer Ellis reporting Mr. Ginsberg's comment to the Court and
Mr. Rastetter's conversation with the Court's Deputy both fit that bill well
enough.  *Edgar*, 93 F.3d at 259.  But Officer Ellis's report and the affidavits
submitted by Lee and his attorneys do not.  Those materials are on the record
for defendants to grapple with and cannot be considered extrajudicial even by
the Seventh Circuit's definition.  *See Edgar*, 93 F.3d at 259 (holding that
information is gained in judicial capacity if it enters record and may be
controverted or tested).  Through the Roche and Rastetter affidavits and
Officer Ellis's report—not to mention the transcript taken on May 12, 2021—

the entire sum and substance of the information the Court received from

Officer Ellis and indirectly from Mr. Rastetter is on the record for defendants

to attack.  Defendants' extrajudicial source arguments are without merit.

Accordingly, each of defendants' suggested bases for recusal has been

rejected.  The Court will proceed to consider whether sanctions for

Mr. Ginsberg are appropriate.  *See, e.g.*, *Ted Lapidus, S.A. v. 77 World

Design, Inc.*, 1997 WL 381794, at *3-4 (S.D.N.Y. July 10, 1997) (considering

sanctions despite recusal motion arguing bias because judge opined that

party would eventually be entitled to sanctions).

## B. <u>Sanctions</u>

A federal court possesses certain "inherent powers, not conferred by rule

or statute, to manage their own affairs so as to achieve the orderly and

expeditious disposition of cases."  *Goodyear Tire & Rubber Co. v. Haeger*,

137 S. Ct. 1178, 1186 (2017) (internal quotation marks and citations omitted).

Those powers also embrace a court's ability "to discipline attorneys who

appear before it" and to "police the conduct of attorneys as officers of the

court."  *In re Goldstein*, 430 F.3d 106, 110 (2d Cir. 2005).

Attorney misconduct in the form of "violations of court orders or other

conduct [that] interferes with the court's power to manage its calendar and

the courtroom" falls within the ambit of a court's inherent power to sanction.

*United States v. Seltzer*, 227 F.3d 36, 42 (2d Cir. 2000).  Attorney misconduct

14

of this sort does not require a finding of bad faith on the attorney's part. *Id.* It is enough to find that the attorney committed misconduct not undertaken for the client's benefit. *Id.*

Functionally, a court's inherent power "allows it to impose monetary sanctions against . . . litigant[s] (or [their] counsel) for misconduct." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367 (2d Cir. 2021). A court can also control admission to its bar. *Id.* But monetary sanctions should be saved for "bad faith, vexatious, or wanton acts or actions otherwise undertaken for oppressive reasons." *Id.* at 368 (cleaned up). Unless, that is, the sanctioned attorney "has negligently or recklessly failed to perform his responsibilities as an officer of the court." *Wilder v. GL Bus Lines*, 258 F.3d 126, 130 (2d Cir. 2001).

In its May 19, 2021 order to show cause, the Court alerted Mr. Ginsberg that it was considering sanctioning him for his improper conduct on May 12, 2021. Dkt. 78, pp. 4-5. In particular, the Court notified Mr. Ginsberg that it was weighing the possibility of using its inherent power to sanction him because his comment led to a disturbance *in the courtroom* by provoking Lee. *Id.* at 3-5.

The Court also pointed Mr. Ginsberg to examples of sanctions and some of New York State's Rules of Professional Conduct to afford a frame of reference for how the Court was evaluating the need for sanctions under these facts.

Dkt. 78, pp. 4-5.  Mr. Ginsberg was then given more than two weeks to respond to the order to show cause.  *Id.* at 5.

Mr. Ginsberg took the Court up on that opportunity.  In doing so, he makes three arguments for why he should not be sanctioned for his conduct on May 12, 2021.  First, he argues that the Court lacks the authority to sanction him because it did not give him proper notice as required before a court can exercise its inherent power to sanction.  Second, he argues that his conduct was not so gravely inappropriate as to warrant sanctions.  And third, he argues that imposing sanctions for his speech would violate his First Amendment rights.

**1. <u>Findings of Fact</u>**

Before considering Mr. Ginsberg's arguments that he should not be sanctioned, however, the Court must first set the record straight as to the operative facts.  For the remainder of this memorandum-decision and order, the Court finds the following facts to be true.

First, the Court finds that Mr. Ginsberg cursed when he approached Lee and his counsel.  Every witness to the encounter except for Mr. Ginsberg himself testified to that effect, affirmed that to be true, or both.  Tr. 2-4; Ellis Report p. 1; Roche Aff. ¶ 3; Rastetter Aff. ¶ 3; Lee Aff. ¶ 3.  Against the backdrop of that consistent narrative, Mr. Ginsberg's relatively mild denial

that he did not "recall swearing at them" does not do much to dissuade the Court.  Tr. 3.

Second, the Court finds that Mr. Ginsberg's testimony that he did not recall swearing at Lee's coterie to be untruthful.  Tr. 3.  The hearing took place fewer than fifteen minutes after Mr. Ginsberg made the comment.  *See* Text Minute Entry Dated 5/12/2021 (noting that court was adjourned at 4:00 p.m. and that court resumed at 4:15 p.m. for hearing concerning comment).  It defies belief that he would forget the comment's substance in such a short timeframe, especially when every other listener distinctly remembered him using the word "fuck."  Tr. 2-4; Ellis Report p. 1; Roche Aff. ¶ 3; Rastetter Aff. ¶ 3; Lee Aff. ¶ 3.

Third, the Court finds that Mr. Ginsberg's particular choice of taunt—wishing that Lee and/or his counsel would "choke"—carried with it a desire that harm should befall the people toward which it was directed.  Tr. 2-4.  That desire means that Mr. Ginsberg's taunt amounted to a physical threat to opposing counsel and his client.

Fourth, despite Mr. Ginsberg's insistence to the contrary, the Court finds that he knew or should have known that an emotionally vulnerable Lee would have overheard his comment.  Mr. Ginsberg knew that Lee was present in the courtroom, because he has affirmed that he approached Officer Ellis to ask when he would be permitted to leave himself.  Ginsberg Aff. ¶ 3.

Mr. Ginsberg was also of course aware that plaintiff had just suffered a blow by losing a trial—three years in the making—to vindicate his constitutional rights. *Id.* ¶ 2.

Fifth, the Court finds that Mr. Ginsberg's comment actively disrupted the courtroom. According to Ms. Spencer, Lee broke into a storm of profanities and disparaging remarks at Mr. Ginsberg in response to his comment. Spencer Aff. ¶ 28. Both Mr. Ginsberg and Ms. Spencer also affirmed that Officer Ellis chastised Mr. Ginsberg for his comment. *Id.* ¶ 29; Ginsberg Aff. ¶ 4. Even plaintiff affirmed that he needed his attorney's and Court staff's help in calming himself after Mr. Ginsberg taunted him and his counsel. Lee Aff. ¶ 4. Lee's explosive reaction and the need for Court personnel to become involved satisfy the Court that its functions were disrupted.

Sixth, the Court finds that Mr. Ginsberg failed to meaningfully apologize for his comment until far too late. He uttered not a word of apology at the initial hearing. *See generally* Tr. *passim*. It was not until his response to the order to show cause—some two months later—that Mr. Ginsberg finally apologized. *See* Ginsberg Aff. ¶ 2 ("I do apologize to Mr. Roche for my comment and hope that he can forgive me.").

### 2. **Authority to Impose Sanctions**

On that factual footing, the Court now turns to Mr. Ginsberg's arguments as to why he should not be sanctioned.  He begins by arguing that the Court lacks the authority to sanction him, principally because it failed to give him proper notice.  Along those lines, Mr. Ginsberg first takes issue with the notice he was afforded of the authority the Court was invoking in considering sanctions.

Specifically, he argues that his conduct on May 12, 2021 does not look much like the facts at issue for either of two cases the Court cited in the May 19, 2021 order to show cause.  *See* Dkt. 78, pp. 4-5 (citing *Seltzer*, 227 F.3d at 42; *Huggins v. Coatesville Area Sch. Dist.*, 2009 WL 2973044, at *2-4 & n.9 (E.D. Pa. Sept. 16, 2009)).  He views the Court's citation to two of New York's Rules of Professional Conduct to be similarly inapposite.  *See* Dkt. 78, pp. 4-5 (citing N.Y. RULES OF PRO. CONDUCT rr. 3.3(f)(2), 3.3(f)(4)).

Mr. Ginsberg's objections stretch the notice requirements well past their breaking point.  The Second Circuit imposes no requirement that a party or Court seeking sanctions point the would-be sanctioned party to a factually identical prior case before sanctions can follow.  *See Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) (finding notice of sanctions adequate without requiring citation to identical case).

Rather, it is enough that the Court laid out the standard for imposing sanctions under the district court's inherent power.  *Schlaifer*, 194 F.3d at 334 (holding that notice of sanctioning authority was adequate where party moving for sanctions explained standard for sanctions under inherent power). Mr. Ginsberg had proper notice that the Court relied on its inherent power in contemplating sanctions against him, as well as the standard for exercising that inherent power.  His argument goes astray.

Alternatively, Mr. Ginsberg argues that he was not given adequate notice of the conduct purported to be sanctionable.  In support of that argument, Mr. Ginsberg asserts that, contrary to the Court's assertion in the order to show cause, there was no evidence that he and Lee needed to be separated after his comment.  *But see* Dkt. 78, p. 3 (Court describing Officer Ellis needing to separate Mr. Ginsberg and plaintiff).

To a certain extent, Mr. Ginsberg is correct, nothing in the record describes Officer Ellis physically separating him from Lee in a strictly literal sense.  But Ginsberg is also trying to keep the dollar he spends.

After all, as discussed above, he argued that the Court should recuse itself because it failed to take plaintiff to task for his emotionally-charged and offensive response to Mr. Ginsberg's comment.  Ms. Spencer has also affirmed that plaintiff yelled "profanities and offensive/disparaging remarks" at Mr. Ginsberg.  Spencer Aff. ¶ 28.

The record further reflects that Officer Ellis calmed plaintiff down and admonished Mr. Ginsberg for his comment.  Roche Aff. ¶4; Lee Aff. ¶ 4 (noting that court staff and attorneys calmed plaintiff by advising him to "be the better man").  By extension, the record supports the Court's recitation of the facts more than well enough to put Mr. Ginsberg on notice that plaintiff's charged reaction to his comment was a matter of particular concern.  *See* Dkt. 78, p. 4 (noting that Mr. Ginsberg's "general contribution to the rapid and complete deterioration of the decorum of the courtroom [was] deeply troubling").

Mr. Ginsberg's last argument concerning the Court's lack of authority to sanction him stems from the Court's reference to his post-trial statement in the plural instead of the singular.  Mr. Ginsberg's argument is again unavailing.

The Court quoted verbatim the various reported incarnations of Mr. Ginsberg's comment in the order to show cause.  Dkt. 78, pp. 2-3.  The Court also described the effect those comments had on Lee.  *Id.* at 3.  The Court is satisfied that Mr. Ginsberg knows precisely the conduct at issue, and thus the notice requirement has been met.  *See Schlaifer*, 194 F.3d at 334 (noting that "only conduct explicitly referred to in the instrument providing notice is sanctionable").

In sum, Mr. Ginsberg's arguments that the Court lacks authority to sanction him must be rejected. *See, e.g.*, *Schlaifer*, 194 F.3d at 335 (finding notice proper even where moving party identified Rule 11 as source of sanctions but also noted inherent power and 28 U.S.C. § 1927 as potential sources).

### 3. Impropriety of Mr. Ginsberg's Conduct

Next, Mr. Ginsberg argues that his comment and the context in which he made it were not severe enough to require sanctions. To that end, he points out that court was not in session when he approached Lee and his attorneys. He also urges that he made only one comment. Finally, he justifies his comment because he contends that his accusation that plaintiff had fabricated evidence was colorable.[6]

To be sure, sanctions should be imposed only "with restraint and discretion." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000). And Mr. Ginsberg has pointed to several cases that he argues demonstrate that his comment was not so offensive as to be sanctionable.

For example, he points to *Revson*. In that case, the Second Circuit reversed an order imposing sanctions on an attorney after a lengthy litigation involving several instances of alleged misconduct. Specifically, but not

---

[6] Whether Mr. Ginsberg's arguments that plaintiff's version of the video was fabricated were colorable remains an open question that the Court must resolve in advance of the recently ordered new trial.

exhaustively, the attorney wrote a letter threatening to attack his opposing counsel's reputation with the "legal equivalent of a proctology exam." 221 F.3d at 79-80.

In addition, the attorney in *Revson* spoke to a news reporter concerning a colorable claim of fraud against the defendants, apparently intending to tarnish his opponent's reputation. 221 F.3d at 80. The attorney also threatened to bring a civil RICO claim, before learning that that claim would be meritless and declining to bring one. *Id.* at 81. The attorney further used aggressive trial tactics, including asking for an adverse inference because the opposing party did not call a witness that he asked to be excluded. *Id.* at 81-82. He also referred to the opposing party (a lawyer) as a snake during trial. *Id.*

After reading *Revson*, the Court is not dissuaded from its position that Mr. Ginsberg's conduct was potentially sanctionable. In *Revson*, the Second Circuit noted disdain for the attorney's "proctology" comment and references to the opposing party as a snake. 221 F.3d at 79-82. Nevertheless, the court reversed the sanctions because the rest of the attorney's conduct served a legitimate tactical end, even if those tactics were uncommonly sharp.[7] *See id.*

---

[7] The Court imagines that the sheer severity of the sanctions imposed in *Revson* also factored into the Second Circuit's analysis—the attorney in that case was ordered to pay a $50,000 fine. 221 F.3d at 73.

As Mr. Ginsberg has pointed out several times, though, his conduct happened after trial came to a close.  Accordingly, it served no discernible purpose to advance his client's interest: it was purely personal.  *Seltzer*, 227 F.3d at 42 (noting district court's ability to invoke inherent power to sanction misconduct "that is not undertaken for the client's benefit").

But the consequences of Mr. Ginsberg's taunt are what convinces the Court that Mr. Ginsberg's actions on May 12, 2021 were more severe than the conduct found not worthy of sanctions in *Revson*.  Remember, the Court's inherent powers come partly from a need to protect the Court's ability to manage *the courtroom*.  *Seltzer*, 227 F.3d at 42.  Fair to say, though, that as an officer of the Court Mr. Ginsberg also carries his own responsibilities to that end.  *See In re Goldstein*, 430 F.3d at 110.

Certainly, under the facts that the Court has found above, Mr. Ginsberg failed to comport with those responsibilities.  But even setting those conclusions of fact to the side and giving Mr. Ginsberg every possible benefit of the doubt, he would still have abandoned his obligations as an officer of the Court.

To explain, let us assume that he did not swear in taunting Mr. Roche.  Tr. 3.  Let us further assume that he did not intend for his comment to be

directed at Lee.[8]  Ginsberg Aff. ¶ 4 (Mr. Ginsberg affirming that he did not "make any comment to plaintiff").  Let us even take as true that plaintiff exploded into a profane and offensive tirade in response to Mr. Ginsberg's comment.  Spencer Aff. ¶ 28.

Even with all of those assumptions in mind, Mr. Ginsberg's taunt was negligent or reckless.  *Wilder*, 258 F.3d at 130 (noting that courts can impose costs as sanction where attorney has "negligently or recklessly failed to perform his responsibilities as an officer of the court").  After all, even if Mr. Ginsberg did not know that Lee was standing next to Mr. Roche, he should have.  He should have also recognized that plaintiff was likely to be in an emotionally vulnerable state, having lost his case only moments earlier.  Lee Aff. ¶¶ 2, 4.

But whether Mr. Ginsberg recognized either or both of those things, he disregarded both risks.  Not to serve his client's best interest, not to help his case along, and not to productively air a grievance or flag it for resolution.  Mr. Ginsberg gloated because he could.  Mr. Ginsberg taunted because he wanted to.  Mr. Ginsberg wished harm on his opponents because he was in a position of strength.

---

[8] This assumption seems to be contradicted by Mr. Ginsberg's roughly contemporaneous statement on the record that he told "them" to choke on the manufactured evidence.  Tr. 3.

Under other circumstances, Mr. Ginsberg's taunt could have been quietly filed away.  Unprofessional and unbecoming, to be sure, but not sanctionable. *See Revson*, 221 F.3d at 79-82 (finding reference to "legal equivalent of a proctology exam" and calling attorney "snake" untoward but not sanctionable).  Had Mr. Ginsberg called Mr. Roche the next day and made the same comment, or had he said it after a chance meeting with him later on, or even if he had approached Mr. Roche in the parking lot while leaving the courthouse, the Court would have let the matter lie.  But he did not. Mr. Ginsberg approached Mr. Roche—and Lee—*in the courtroom*, trusting that the Court's security officers could manage any backlash and prevent any reprisal.

As it turned out, they needed to.  By incensing Lee, Mr. Ginsberg's taunt caused a row that Officer Ellis was tasked with calming.  Spencer Aff. ¶ 28; Lee Aff. ¶ 4.  In sum, Mr. Ginsberg deliberately taunted at least opposing counsel and should have realized that taunt would have reached plaintiff as well.  He issued that taunt *in the courtroom*, moments after a proceeding had ended.

By extension, the Court can only draw one of two conclusions.  Perhaps Mr. Ginsberg issued his taunt not fully appreciating the capacity for that comment to lead to conflict.  Or perhaps he simply did not care because he knew the Court and its officers would act quickly to quell any disquiet before

the consequences reached him.  More than the language Mr. Ginsberg used, and more even than the immaturity shown by the taunt, it was Mr. Ginsberg's callous disregard for the safety and sanctity of the courtroom that forces the Court to consider sanctions.

Nevertheless, Mr. Ginsberg argues that because court was no longer in session when he taunted Lee's counsel, his conduct was not as inappropriate as it would otherwise have been.  He is correct of course.  But once again, that does not make his conduct unsanctionable—only less culpable.

The authority he relies on for the opposite conclusion does not convince the Court otherwise.  Specifically, Mr. Ginsberg points the Court to *Bridges v. California*, in which the Supreme Court held that "the power of federal courts to inflict summary punishment for contempt shall not be construed to extend to any cases except the misbehavior of persons in the presence of the . . . courts, or so near thereto as to obstruct the administration of justice." 314 U.S. 252, 267 (1941) (cleaned up).

That citation does not help Mr. Ginsberg's case for two reasons.  First, the standard for contempt is entirely different from the standard governing the Court's inherent power to sanction.  *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1268 n.8 (11th Cir. 2021) ("As a reminder, sanctions imposed for contempt of court are not the same thing as sanctions imposed under the court's inherent power to police against bad faith conduct before it.

27

Different rules apply to each." (cleaned up)); *Pro-Choice Network v. Project Rescue W. N.Y.*, 848 F. Supp. 400, 403-04 (W.D.N.Y. 1994) (noting differences between inherent power and contempt sanctions).

Second, this case meets the Supreme Court's definition in any event.  A jury verdict had just been taken against Lee in the courtroom and the Court had stepped off the bench.  Mere moments later, Mr. Ginsberg caused tumult in the same courtroom.  The Court is satisfied that Mr. Ginsberg's comment was "so near" to its presence based on this close temporal proximity.  *Bridges*, 314 U.S. at 267.  Similarly, the need for a sworn officer to quell the fracas makes clear that Mr. Ginsberg "obstruct[ed] the administration of justice." *Id.*

The rest of the cases Mr. Ginsberg cites as comparators do not disrupt the Court's calculus.  Taunting an opposing party in a courtroom after a trial victory is decidedly more severe than an attorney telling opposing counsel to "cut the bullshit" after that opposing counsel spent an extended period of time trying to draw the attorney into an acknowledgement that he would not contest jurisdiction during a deposition. *See Wetzel v. Hyatt Corp.*, 1992 WL 122928, at *1 (E.D. Pa. June 1, 1992).  After all, it is one thing to forcefully express displeasure about an opponent abusing the process, as in *Wetzel*, but quite another to goad an opponent after a trial victory for no justified purpose. *See id.*

28

Similarly, the Court is unmoved by Mr. Ginsberg's citation to *Saldana v. Kmart Corp.*, in which the Third Circuit reversed a grant of sanctions for four uses of profanity by one party outside of the district court's presence despite there being evidence of the opponent using the same profanity in similar contexts.  260 F.3d 228, 238 (3d Cir. 2001).  Unlike in *Saldana*, Mr. Ginsberg's taunting Mr. Roche in Lee's presence moments after the Court left the bench caused a security incident *in the courtroom*.  *Compare id.*, *with* Lee Aff. ¶ 4; Spencer Aff. ¶ 28.  Again, it must be stressed: the issue is not that Mr. Ginsberg used profanity.  The issue is that Mr. Ginsberg taunted opposing counsel in the courtroom within earshot of the party opponent right after that party opponent lost at trial.

Finally, *Mruz v. Caring*, the last case Mr. Ginsberg cites for the proposition that he should not be sanctioned, does not protect him.  166 F. Supp. 2d 61 (D.N.J. 2001).  In that case, the Court considered the conduct at issue—namely "venomous, abusive, outrageous[,] and personal" behavior during a deposition involving "several objectionable techniques to disrupt the fact-finding purpose of depositions"—worthy of sanctions in the proper context.  *See id.* at 67-68 (noting that magistrate judge "properly invoked the Court's inherent power to sanction").  The district court in *Mruz* nevertheless reversed its magistrate judge's decision to sanction because none of the challenged actions took place anywhere near the Court's

presence.  *Id.* at 68, 71-72 (pointing out that "[i]f any of the behavior which gave rise to this motion occurs in the presence of this Court . . . this Court will not hesitate to impose appropriate sanctions").

As discussed above, Mr. Ginsberg's comment came so quickly after the Court left the bench that his reliance on the Court's absence rings hollow. The Court was directly burdened and disrupted by Mr. Ginsberg's behavior regardless of the fact that it did not witness it firsthand.

By extension, none of the cases Mr. Ginsberg cites renders his comment unworthy of sanctions.  *See, e.g.*, *Huggins v. Coatesville Area Sch. Dist.*, 2009 WL 2973044, at *3-4 (E.D. Pa. Sept. 16, 2009) (noting that "[t]reating an adversary with advertent discourtesy, let alone with calumny or derision, rends the fabric of the law" in sanctioning attorney for incivility and foul language during deposition).

### 4. **First Amendment Protections**

As a last bastion, Mr. Ginsberg relies on his First Amendment rights to fend the Court off from imposing sanctions.  Specifically, he again argues that because court was no longer in session, punishing him for speech would "set a dangerous precedent that would destroy First Amendment protections and would allow censorship of a statement made outside a tribunal."

In doing so, Mr. Ginsberg acknowledges, as he must, that "[i]t is unquestionable that in the courtroom itself, during a judicial proceeding,

whatever right to 'free speech' an attorney has is extremely circumscribed." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1071 (1991).  To Mr. Ginsberg's mind, even though his speech occurred in the courtroom, the fact that it happened not during but immediately after a judicial proceeding precludes sanctions.

To support his point, he cites to cases prohibiting government interference with the content of speech.  *See Cohen v. California*, 403 U.S. 15, 24 (1971) (noting that usual rule is "that governmental bodies may not prescribe the form or content of individual expression").  But Mr. Ginsberg is missing the point.  The Supreme Court has long permitted the government to impose "reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal citations and quotation marks omitted).

It is worth keeping in mind, though, that "[l]awyers are officers of the court and, as such, may legitimately be subject to ethical precepts that keep them from engaging in what otherwise might be constitutionally protected speech." *Gentile*, 501 U.S. at 1081-82 (O'Connor, J., concurring)).

Under those guiding principles, the Court is satisfied that preventing attorneys from taunting an adversary *in a courtroom* immediately after prevailing at trial is a reasonable restriction on the time, place, and manner of speech. *Ward*, 491 U.S. at 791. And it bears repeating: the Court would not approve of Mr. Ginsberg using profanity in its courtroom, but whether he used profanity or not is irrelevant to whether he should be sanctioned. Rather, Mr. Ginsberg's conduct is sanctionable because he spoke in such a way that: (1) he at least should have known would get a rise out of his opponents; (2) in the courtroom; (3) moments after a trial had come to an end. *See id.*

Similarly, Mr. Ginsberg could have gotten his point across any number of different ways. Again, he could have waited until he was outside the courthouse to approach Mr. Roche and/or Lee. During the trial, he also could have moved for sanctions for evidence tampering. Neither of those methods would have compelled the Court to consider sanctions against him now.

In other words, punishing Mr. Ginsberg—or any attorney like him—for goading a party opponent in the context Mr. Ginsberg did fits comfortably within the Supreme Court's guideposts for when and how the Court as a government body can regulate speech. *Ward*, 491 U.S. at 791 (permitting restrictions on free speech that do not limit content, are narrowly tailored to

serve significant governmental interest, and leave open alternate means of presenting information).

None of the other authorities Mr. Ginsberg relies on persuades the Court otherwise.  In fact, Mr. Ginsberg has not pointed to a single case even stopping to consider whether sanctioning an attorney under a court's inherent power would violate the attorney's First Amendment rights.  *Cf. Huggins*, 2009 WL 2973044, at *3-4[9] (sanctioning attorney for discourteous speech during deposition without making reference to free speech or First Amendment).

Instead, the closest that Mr. Ginsberg comes is *In re Sawyer*.  360 U.S. 622 (1959).  That case reversed a one-year suspension imposed on an attorney for engaging in a "willful oral attack upon the administration of justice in . . . the . . . United States District Court for the District of Hawaii."  *Id.* at 626.  However, the Supreme Court did not reverse based on fundamental protections for the appellant's rights to free speech.  Instead, it reversed because the evidence to support the "serious charge" of impugning the integrity of the presiding judge was insufficient.  *Id.* at 640.

---

[9] Mr. Ginsberg tries to distinguish *Huggins* by pointing out that the sanctionable comments in that case came during deposition, while his conduct occurred after trial had concluded.  *Huggins*, 2009 WL 2973044, at *1-2.  The Court freely acknowledges that improper speech during a court-related proceeding is more culpable than it would otherwise be.  But it does not follow that attorney misconduct *must* be during a proceeding to undermine the legitimacy of a court's ability to impose reasonable time, place, and manner restrictions on an attorney's speech.

Even the broad principle Mr. Ginsberg uses *In re Sawyer* to support misses the mark.  He uses that case to argue that there is "no ground whereby the pendency of litigation might be thought to make an attorney's out-of-court remarks more censurable[.]"  360 U.S. at 636.  In doing so, he seems to be ignoring the two prior sentences: "[a] lawyer does not acquire any license to [engage in hostile speech] by not being presently engaged in a case. They are equally serious whether he [is] currently . . . engaged in litigation before the judge or not."  *Id.*  In other words, Mr. Ginsberg's quoted language speaks to the opposite point of the one he is trying to make: speech by attorneys can merit punishment even when a case is not pending.  *See id.*

Nor do Mr. Ginsberg's remaining cases help his argument.  *Wood v. Georgia* deals with a conviction for criminal contempt based on the content of an out-of-court statement.  370 U.S. 375, 384-86 (1962).  *Gentile* upheld a state bar's rule limiting the ability of attorneys to speak to the press provided that the comments carry a substantial likelihood of material prejudice to a future case.  501 U.S. at 1063.  *Fieger v. Thomas* declined to grant a preliminary injunction to prevent the Michigan Attorney Grievance Commission from prosecuting a disciplinary complaint against him based on the First Amendment's vagueness and overbreadth doctrines. 872 F. Supp. 377, 378, 387-88 (E.D. Mich. 1994).

None of those cases help Mr. Ginsberg's position that censuring him would not be a reasonable restriction of the time, place, and manner of his speech. *See Gentile*, 501 U.S. at 1081 (holding that "[t]he First amendment does not excuse [an attorney] from [his] obligation [to adhere to the Rules of Professional Conduct], nor should it forbid . . . discipline").

Finally, Mr. Ginsberg argues that "[e]ven accepting that an expletive was used in this matter, by all accounts, it was used as an adjective and therefore served the dual communicative function of relatively precise, detached explication, as well as [expressing] otherwise inexpressible emotions . . . ." The Court has already laid this argument to rest. The content of Mr. Ginsberg's comment is of course deplorable. But the time, place, and manner in which he made that comment is what requires the Court to impose sanctions.

### 5. <u>Sanctions Imposed</u>

Having addressed each of Mr. Ginsberg's arguments to the contrary, the Court now holds that Mr. Ginsberg's taunt must be sanctioned. After carefully weighing Mr. Ginsberg's conduct and the mitigating factors that he has brought to the Court's attention, including that court was no longer in session when he made his singular comment, that sanction should be modest. There is no need to suspend Mr. Ginsberg from practice in the Northern District of New York.

However, Mr. Ginsberg must be fined a total of $3,000 for taunting Mr.

Roche, Mr. Rastetter, and Lee on May 12, 2021, with each of the three

recipients of his taunt receiving $1,000 of that total fine.  Mr. Ginsberg is to

submit a $3,000 payment to the law firm of Sivin, Miller, & Roche LLP no

later than Friday, September 24, 2021.  Mr. Roche's firm is then to hold that

fund until any appeal from this order is resolved, at which point it may

distribute the fund as instructed in this memorandum-decision and order.

In addition, Mr. Ginsberg's emotionally charged, unprofessional conduct in

this case undermines the Court's confidence that he will not escalate matters

further should he remain involved.  The Court's concerns are especially

pronounced because the relative credibility of the two different versions of the

video will be extremely important to the new trial ordered to address

plaintiff's claims of excessive force.  Mr. Ginsberg is therefore barred

immediately from working on this case in any capacity, except as necessary

to turn the case file over to defendants' attorneys.

Defendants must notify the Court that they have selected a new attorney

or elected to continue with the Pattison, Sampson Law Firm and/or Richard

T. Morrissey, Esq., no later than Friday, September 24, 2021.  The Court

notes, however, that if defendants stay the course with the Pattison,

Sampson firm, Mr. Ginsberg is to have no role in the further litigation of this

case, including a behind-the-scenes role directing trial strategy.  Defendants

36

are, of course, also free to hire entirely new counsel for the remainder of this case.

Lastly, the Court will pass this memorandum-decision and order on to the Attorney Grievance Committee for the Appellate Division of the New York State Supreme Court, Third Department, for it to determine whether further sanctions should follow.

## IV. <u>CONCLUSION</u>

Therefore, it is

ORDERED that

1. Michael E. Ginsberg, Esq. is formally sanctioned for an inappropriate, taunting comment in the courtroom on May 12, 2021;

2. Michael E. Ginsberg, Esq. is ordered to pay a fine of $3,000 to Sivin, Miller & Roche LLP no later than Friday, September 24, 2021;

3. The law firm of Sivin, Miller & Roche LLP is instructed to hold that $3,000 fine until after any appeal from this order is resolved, at which point the firm is to distribute $1,000 each to Lamont Lee, David Roche, Esq., and Clyde Rastetter, Esq. unless ordered otherwise;

4. Michael E. Ginsberg, Esq. is barred from any further involvement in this case effective immediately;

5. Defendants are directed to advise this Court of whether they will proceed with the Pattison, Sampson Law Firm and Richard

T. Morrissey, Esq. without further involvement by Michael E.
Ginsberg, Esq. as their counsel, or will retain new counsel for the rest
of this case no later than Friday, September 24, 2021; and

6.  A copy of this memorandum-decision and order is directed to be mailed
to the Attorney Grievance Committee for the New York State Supreme
Court, Appellate Division, Third Department, 286 Washington Avenue
Extension Suite 200, Albany, New York 12203, for it to determine if
further sanctions are warranted.

IT IS SO ORDERED.


Dated:  September 8, 2021
      Utica, New York.

David N. Hurd
U.S. District Judge