UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAMONT LEE,

                        Plaintiff,

v.                                                                      1:19-CV-0473
                                                                        (GTS/DJS)
THE CITY OF TROY; PATROLMAN
CHRISTOPHER PARKER; PATROLMAN LOUIS
PERFETTI; PATROLMAN JUSTIN ASHE; and
PATROLMAN KYLE JONES,

                        Defendants.

_____

APPEARANCES:                                   OF COUNSEL:

SIVIN, MILLER & ROCHE LLP                       DAVID ROCHE, ESQ.
   Counsel for Plaintiff                        CLYDE RASTETTER, ESQ.
20 Vesey Street, Suite 1400
New York, NY 10007

LAMARCHE SAFRANKO LAW PLLC                      NICHOLAS J. EVANOVICH, III, ESQ.
   Counsel for Defendants
987 New Loudon Road
Cohoes, NY 12047

PATTISON SAMPSON LAW FIRM                       RHIANNON INEVA SPENCER
   Co-Counsel for Defendants
22 First Street
P.O. Box 208
Troy, NY 12181-0208

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this civil rights action filed by Lamont Lee ("Plaintiff")

against the City of Troy and three above-captioned patrolmen ("Defendants"), are two oral

motions *in limine* made during a hearing to determine the admissibility of competing copies of

security system video footage of Plaintiff's arrest on March 3, 2018: (1) Plaintiff's motion *in*

*limine* to admit into evidence (at the second trial in this action) his copy of the video, and to

permit cross-examination of Defendants regarding their reliance (before the first trial) on their

competing copy of the video; and (2) Defendants' motion *in limine* to admit into evidence (at the

second trial) their copy of the video solely to fully explain to the jury their prior reliance on that

copy.  For the reasons set forth below, Plaintiff's oral motion *in limine* is granted in part and

denied in part without prejudice to renewal at trial based on necessity (given the testimony

presented); and Defendants' oral motion *in limine* is denied without prejudice to renewal at trial

based on necessity (given the testimony presented).

## I.    RELEVANT BACKGROUND

### A.    Relevant Procedural History

Because this Decision and Order is intended primarily for the review of the parties, the

Court will not recount the procedural history of this action leading up to the hearing that occurred

in this action on July 27, 2022, other than to respectfully refer the reader to U.S. District Judge

David N. Hurd's Memorandum-Decision and Order of September 8, 2021, which (among other

things) granted Plaintiff's motion for a new trial under Fed. R. Civ. P. 59.  (Dkt. No. 95.)

Generally, the current motions *in limine* result from the fact that, following Defendants'

use of force against Plaintiff during his arrest, both Defendants and Plaintiff obtained differing

copies of the original video footage of that use of force before the untimely destruction of that

original video footage.  Other than whether they exist in the form of two clips or one, the video

copies differ in only two respects: (1) Defendants' copy plays at a faster speed than does

2

Plaintiff's copy; and (2) Defendants' copy shows two knee strikes administered by Defendant Jones against Plaintiff, while Plaintiff's copy shows a third knee strike.

      **B.**      **Relevant Factual Background**

On March 3, 2018, Defendant Officers used force against Plaintiff during his arrest on a sidewalk in Troy, New York, within view of a Night Owl HD Security System camera owned and operated by an adjacent barbershop called Styles Upon Styles.  The system had been purchased by the barbershop's co-owner, Sara Whitaker, and set up by an electrician in "maybe 2011, 2012."

On March 4, 2018, after learning of the incident the night before, Ms. Whitaker accessed the security system video remotely (by "live stream[ing]" it) through an app on her smart phone, and "saved" or "record[ed]" a copy of that video to her smart phone.[1]  As she was doing so, she received a phone call, which automatically disrupted the process of recording.  After the phone call, Ms. Whitaker rewound the video to "15 seconds or so" before the point of disruption, and resumed recording.  This resulted in the recording of two video clips on Ms. Whitaker's smart phone, the second of which somewhat "overlap[ped]" the first.

On March 6, 2018, Ms. Whitaker was visited by Defendant Ashe and Officer William Gladysz, an Evidence Technician employed by the Troy Police Department.  Officer Gladysz watched the footage on a monitor connected to a DVR in the barbershop's utility closet.  He then retrieved a thumb drive from his patrol car, tried to "transfer[]" or "copy[]" the footage from Ms.

---

[1]      The Court notes that, during the hearing, Plaintiff repeatedly acknowledged that what was downloaded by Ms. Whitaker onto her phone was a "copy" of her security system's video footage (albeit an "exact" one, which he argued was "unaltered" even though it was broken into two clips that were subsequently "stitched" together by Plaintiff).

Whitaker's security system onto his thumb drive, and reported success before leaving with Defendant Ashe.  About fifteen to twenty minutes later, both officers returned.  Officer Gladysz reported that he had been unsuccessful in copying the footage, tried again, and expressed a hope of success before leaving with Ashe.  About fifteen minutes later, Officer Gladysz (without Defendant Ashe) returned a third time and reported he had again been unsuccessful.  As he was trying again to copy the footage from the security system to his thumb drive, the TV to which the DVR was attached "went black" and the light "flickered" on his "side of the room" (near the utility closet in which he sat).[2]  Shortly later, Officer Gladysz left to check if the copying had been successful, and reported that it had.  The copy that Officer Gladysz had obtained was broken into two clips, which no employee of the Troy Police Department subsequently joined together.

Meanwhile, about an hour after the final departure of Officer Gladys on March 6, 2018, Ms. Whitaker discovered that the original video footage of the use of force against Plaintiff had been erased in its entirety from her security system (along with all of its footage for the prior 30 days), which had never before happened to her system.  Ordinarily, the system (which is password protected in a locked closet) automatically holds footage for 30 days and then deletes footage thereafter on a "day by day" basis.

On March 21, 2018, Patrick Anastasi (a private investigator employed by Plaintiff's then-criminal defense attorneys, the Rensselaer County Public Defender's Office), with the permission of Ms. Whitaker, transferred the two-overlapping-clip copy of the video from her smart phone to

---

[2]     The Court notes that, although Officer Gladysz had no recollection of this power-disruption happening, it credits Ms. Whitaker's recollection of this event.

his smart phone (either through Air Drop or e-mail), then emailed the copy to his office. On

March 21 or 22, 2018, he emailed the copy to the Public Defender's Office.

Between April 2 and 6, 2018, Keith Christiansen (a private investigator employed by

Plaintiff's new criminal defense attorney, Michael Feit) retrieved the copy from the Public

Defender's Office and transferred it to Mr. Feit.

At some point in August 2018, Mr. Feit gave this copy to Plaintiff's current counsel who

subsequently "just stitched [the clips] together" at some point, removing the overlapping

footage.[3]

Defendants' video copy (contained at Trial Exhibits D-8 and D-9) shows only two knee

strikes administered by Defendant Jones against Plaintiff, omitting a third strike between the end

of D-8 (occurring at about the 9:54:31 p.m. mark of the time-stamped video, when Plaintiff's hat

is on) and the beginning of D-9 (occurring at about the 9:54:32 p.m. mark, when Plaintiff's hat is

off).  However, Plaintiff's video copy (contained at Trial Exhibit P-12B) shows a third knee

strike administered by Defendant Jones against Plaintiff between about the 9:54:31 p.m. mark

and about the 9:54:32 p.m. mark, during which Plaintiff's hat comes off.

### C.    Summary Parties' Oral Motions *in Limine*

At the start of the hearing, Plaintiff made an oral motion *in limine* to do two things: (1)

admit into evidence his video copy, and (2) permit cross-examination of Defendants regarding

---

[3]        The Court notes that it appears this "stitch[ing] together" occurred on or before
April 29, 2021.  (Dkt. No. 90, Attach. 2, at ¶¶ 9-13, 19 [Affid. of Rhiannon I Spencer, Esq.].)
The Court notes also that Plaintiff did not disclose this "stitched together" copy during discovery
(unlike Defendants, who did disclose their copy during discovery).  (*Id*. at ¶¶ 5, 24; Dkt. No. 91,
Attach. 1, at ¶ 9 [Affid. of David Roche, Esq.]; Dkt. No. 95, at 10 [Judge Hurd's Decision and
Order of Sept. 8, 2021, granting Plaintiff's motion for a new trial].)

their prior reliance on their video copy.  Regarding the second part of his motion, Plaintiff argued that such cross-examination was warranted because Defendants' copy omitted "a second" of footage showing a third knee administered by Defendant Jones against Plaintiff, which was the "most crucial part" of the use of force against Plaintiff (because it was so "clear"), and thus raised a "legitimate concern" as to why the third knee strike is missing from Defendants' copy. In support of his motion, Plaintiff presented the hearing testimony of four witnesses: (1) Sara Whitaker (the co-owner of the Styles Upon Styles barbershop); (2) Patrick Anastasi (a licensed private investigator); (3) Keith Christiansen (a licensed investigator); and (4) Michael A. Feit, Esq. (Plaintiff's former criminal defense attorney).

Although Defendants did not oppose the first portion of Plaintiff's motion (which requested the admission into evidence of his copy), Defendants made an oral motion to admit into evidence their copy to fully explain to the jury (e.g., on redirect examination) their prior reliance on that copy.  In support of their motion, Defendant presented the testimony of one witness: William Gladysz (an Evidence Technician employed by the Troy Police Department).

## II.    RELEVANT LEGAL STANDARD

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984).

"An original . . . recording . . . is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002.  However, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  Fed. R. Evid.

1003.  "To satisfy the requirement of authenticating . . . an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  Examples include . . . [t]estimony [of a witness with knowledge] that an item is what it is claimed to be . . . and . . . [e]vidence describing a process or system and showing that it produces an accurate result."  Fed. R. Evid. 901(b)(1).

"Rule 901 does not erect a particularly high hurdle."  *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir. 2001) (internal quotation marks omitted).  "This requirement is satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity . . . .'"  *United States v. Ruggiero*, 928 F.2d 1289, 1303 (2d Cir. 1991) (internal quotation marks omitted).  "[T]he burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be.  Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood."  *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999) (internal quotation marks omitted).

Finally, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 901.

## III.   ANALYSIS

### A.   Plaintiff's Motion *in Limine*

As indicated above in Part I.C. of this Decision and Order, in his oral motion *in limine*, Plaintiff has requested two forms of relief: (1) an Order admitting into evidence (at the second

trial in this action) his copy of the video of his sidewalk arrest on March 3, 2018; and (2) an

Order permitting cross-examination of Defendants (at the second trial in this action) regarding

their prior reliance on their competing copy of that video before the first trial in this action (e.g.,

their statements, in their use-of-force memoranda and deposition testimony, that only two knee

strikes occurred, based on their review of their competing copy to "refresh [their] memory" of the

use-of-force incident).

      With respect to the first form of requested relief, Defendants do not oppose this request,

but agree that Plaintiff's copy of the video is a "fair and accurate" representation of the events

that transpired on the sidewalk in question on March 3, 2018.  Defendants' lack of opposition to

this portion of Plaintiff's motion lightens his burden with regard to that portion such that he need

only show that it possesses facial merit.[4]  Granted, whether Plaintiff has met this burden is

somewhat of a close call given (1) the fact that his copy consists of two "overlapping" clips of

video (received from Ms. Whitaker) that have been "stitched together" by someone in the office

of Plaintiff's counsel, and (2) the fact that Plaintiff has adduced no testimony (or even argument)

regarding at what point the "overlapping" clips were "stitched" together.  (As stated above in Part

I.B. of this Decision and Order, Plaintiff's copy does not contain any repetition of footage.)

---

      [4]      In this District, when a non-movant fails to oppose a legal argument asserted by a
movant, the movant's burden with regard to that argument is lightened such that, in order to
succeed on that argument, the movant need only show that the argument possess facial merit,
which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(a)(3)
("Where a properly filed motion is unopposed and the Court determines that the moving party
has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure
to file or serve any papers as this Rule requires shall be deemed as consent to the granting or
denial of the motion, as the case may be, unless good cause is shown."); *Rusyniak v. Gensini*, 07-
CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting
cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & nn.2, 3 (N.D.N.Y. Aug.
7, 2009) (Suddaby, J.) (collecting cases).

However, given the testimony of Ms. Whitaker, Mr. Anastasi, and Attorney Feit, and the Court's

careful review of Plaintiff's copy, the Court is satisfied that Plaintiff has met his modest

threshold burden.

      The Court therefore grants this portion of Plaintiff's motion.

      With respect to the second form of requested relief in Plaintiff's motion, Defendants

again do not contest the need for at least some cross-examination regarding their copy of the

video given their reliance on that copy when making their prior statements that only two knee

strikes occurred.  However, they argue that such cross-examination should be accompanied by

their ability to present their copy to the jury in order to "rebut" or explain their prior reliance on

that copy.  Plaintiff, meanwhile, does not oppose such use of Defendants' copy, but argues that

such use "should be . . . subject to [apparently further] cross-examination . . . as to the credibility

. . . of [their reliance on their copy]."

      The parties do not appear to appreciate the needless risk of confusion of the issues,

misleading of the jury and waste of time posed by this proposed course of action, i.e., unfettered

cross-examination accompanied by admission into evidence of Defendants' video copy to

counterbalance that cross-examination.  To be clear, the Court does not understand Plaintiff's

proposed cross-examination to be brief: he has repeatedly stated his position that the third strike

is "the most crucial part" of the use of force against him, and that the omission of the third strike

from Defendants' copy is (somehow) a "legitimate concern" for the jury (even though Plaintiff

innocently maintains that he is not arguing that Defendants' copy was "fabricated").

      Moreover, Plaintiff has not persuaded the Court of the need to focus on the *cause* of the

omission of the third knee strike from Defendants' copy.  As indicated above in Part I.C. of this

Decision and Order, in their oral motion *in limine*, Defendants have assured the Court that they do not intend, at the second trial, to rely on their copy as a competing "fair and accurate" depiction of the use of force against Plaintiff on March 3, 2018.  Rather, they intend to rely on Plaintiff's copy (which shows a third knee strike administered by Defendant Jones against Plaintiff) as the *sole* "fair and accurate" depiction of that use of force.  Indeed, it appears that the second trial could proceed without *any* reference to Defendants' copy, if it were not for the fact that Defendants relied on that copy when preparing their use-of-force memoranda and giving deposition testimony before the first trial.  As a result, it appears that the only need for cross-examination regarding Defendants' copy would be to *briefly* probe their anticipated explanation (at the second trial) of why, in their use-of-force memoranda and deposition testimony, they stated that Defendant Jones administered against Plaintiff only two knee strikes: Defendant Officers were relying in good faith on Defendants' copy to "refresh [their] memory" of events, because the copy had been dutifully made by an evidence technician employed by the Troy Police Department.

        To the extent that Plaintiff requests leave to further cross-examine Defendants regarding their copy (e.g., in order to innocently inquire into the "concern[ing]" cause of the less-than-one-second difference between their copy and Plaintiff's copy, and the state of mind of any person or persons responsible for that cause), Plaintiff has not shown cause for such leave.  For example, Plaintiff has not persuaded the Court that the third strike is "the most crucial part" of the use of force against him, given (1) his actions during his arrest, (2) the third knee strike's duration and apparent forcefulness compared to the other two knee strikes, (3) the third knee strike's clarity compared to the other two knee strikes, and (4) the clarity of the numerous punches also

administered against Plaintiff.

In addition, Plaintiff has not persuaded the Court that the omission of less-than-one-second of footage from Defendants' copy showing the third strike is a "legitimate concern" for the jury, given (1) the fact that Plaintiff has not claimed (and indeed concedes that he is not even arguing) that Defendants' copy had been "fabricated," (2) the fact that Plaintiff has not claimed (and indeed concedes that he is not even arguing) that the destruction of the original video had been caused by the Troy Police Department evidence technician, or that such destruction was intentional or reckless,[5] (3) the credibility of the hearing testimony of the Troy Police Department Evidence Technician William Gladysz, (4) the lack of further testimony (from Ms. Whitaker or a video expert) regarding how the original video had been destroyed and/or how any copy of that original video had been fabricated or manipulated, and (5) the age of Night Owl HD Security System.  Indeed, to the contrary, the Court finds that further cross-examination regarding Defendants' copy (and possible admission of Defendants' copy for purposes of rehabilitation) would result in the danger of confusion of the issues, misleading the jury and wasting time that would substantially outweigh the probative value of that further cross-examination (and possible admission of Defendants' copy) under Fed. R. Evid. 403.

The Court therefore grants in part, and denies in part, the remaining portion of Plaintiff's motion.  Plaintiff will be permitted to *briefly* cross-examine Defendants regarding their copy to test their explanation of how and why they previously relied on it (e.g., in preparing their use-of-

---

[5]     The Court notes that Plaintiff has conspicuously not moved for sanctions (e.g., in the form of an adverse inference, the preclusion of evidence, and/or the right of further cross-examination) based on the spoliation of the original video or manipulation of Defendants' copy (or even argued how either Defendant City or Defendants Officers were personally involved in any such spoliation or manipulation).

force memoranda and deposition testimony).  Any further cross-examination regarding

Defendants' copy shall be prohibited subject to a showing of further need at trial (given the

testimony presented).[6]

> **B.    Defendants' Motion *in Limine***

As indicated above in Part I.C. of this Decision and Order, in their oral motion *in limine*,

Defendants have requested an Order admitting into evidence (at the second trial) their copy of the

video solely to fully explain to the jury their prior reliance on that copy.

For the reasons set forth above in Part III.A. of this Decision and Order, the Court finds

that, although reference to Defendants' copy will certainly be necessary to explain Defendant

Officers' prior statements and testimony regarding whether there was a third knee strike, any

further such use of that copy–including admission into evidence–would unduly risk confusing the

issues in the case, misleading the jury and wasting time under Fed. R. Evid. 403.

As a result, Defendants' motion is denied without prejudice to renewal at trial based on

necessity (given the testimony and evidence presented).

Finally, some clarification is warranted in light of Plaintiff's argument at the hearing that

"a jury should be aware . . . that . . . [Defendant Officers] previously testified at another

proceeding that there were two kicks . . . ."  To the extent Plaintiff intends to rely at the second

trial on testimony adduced from Defendant Officers during the first trial regarding the number of

---

[6]    The Court notes that, although Plaintiff does not appear to have deposed
Defendant Officers regarding the extent to which their new reliance on the one second of footage
in question from Plaintiff's copy (showing a third knee strike administered by Defendant Jones)
has changed their testimony regarding the force used against Plaintiff, at the hearing Defendants
indicated their position that they "don't believe this case hinges on a second or a third [knee]
strike," and Plaintiff has not requested leave to conduct, on an expedited basis, a limited second
deposition of Defendant Officers regarding their new reliance on the second of footage.

knee strikes administered by Defendant Jones, Plaintiff is respectfully advised that such reliance will be precluded pursuant to Fed. R. Evid. 403, absent a further ruling of the Court.[7]  Moreover, although the parties may refer to other testimony from the first trial for purposes of impeachment, they must refer to that other testimony as coming from "a prior proceeding" (without mentioning that the "proceeding" was a trial).[8]

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's oral motion *in limine* is **GRANTED in part** and **DENIED in part without prejudice** to renewal at trial based on necessity (given the testimony presented); and it is further

**ORDERED** that Defendants' oral motion *in limine* is **DENIED** without prejudice to

---

[7]    *Cf. United States v. Woo*, 917 F.2d 96, 97-98 (2d Cir. 1990) (finding that, although the affidavit and grand jury testimony of a case agent "may well have been" a prior inconsistent statement, it was within the district court's discretion to exclude the evidence on the ground that its probative value was outweighed by the danger of prejudice or confusion of the issues, where the evidence at issue "did not concern the core of the evidence against [the defendant] . . . ."]), *accord*, *United States v. Gil*, 298 F. App'x 73, 76 (2d Cir. 2008) ("A party's own statement may be admissible under [Fed. R. Evid.] 801(d)(2), but it must also be relevant and more probative than prejudicial."); *In Al-Sabahi v. Schiraldi*, 10-CV-5748, 2013 WL 6506257, at *7-8 (S.D.N.Y. Dec. 12, 2013) (adopting a report-recommendation that denied a habeas corpus petition where the petitioner's trial conviction had been upheld on appeal by the First Department, which stated, in relevant part, that "[t]he [trial] court providently exercised its discretion in concluding that any probative value in admitting the [ambiguous] notation [contained in the prosecutor's notes from the complainant's interview] as a purported 'prior inconsistent statement' of the complainant was outweighed by the potential of causing jury speculation and confusion because the details of the notation were uncertain and susceptible to distortion").

[8]    *See, e.g., United States v. Hicks*, 15-CR-0033, 2018 WL 1789932, at *2 (W.D.N.Y. Apr. 16, 2018) ("During the retrial, the parties shall not refer to a 'prior' trial, a 'mistrial,' or otherwise suggest in any way that this case has been tried previously. If either party seeks to impeach a witness with that witness's testimony from the prior trial, the party shall refer to the witness's testimony in a prior 'proceeding' or 'hearing,' without mentioning that that 'proceeding' or 'hearing' was an earlier trial of this case.").

renewal at trial based on necessity (given the testimony presented).

Dated: August 4, 2022
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge